IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARIE M. YURECKA, individually and          :
as Administratrix of the ESTATE OF          :
WILLIAM J. YURECKA, Deceased,               :
and as Natural Guardian of MICHELLE         :
M. YURECKA, and KEVIN W.                    :
YURECKA, Minors, and BRYAN R.               :
YURECKA, Individually                       :
                                            :
        Plaintiffs,                         :
                                            :
        vs.                                 :       CIVIL ACTION NO. 3:04-CV-1352
                                            :       (JUDGE KOSIK)
JEFFREY ZAPPALA and ARLENE                  :
ZAPPALA                                     :
                                            :
        Defendants and Third                :
        Party Plaintiffs,                   :
                                            :
        vs.                                 :
                                            :
RONALD C. ROCKWELL,                         :
RONALD M. ROCKWELL, and                     :
THE PENNSYLVANIA TURNPIKE                   :
COMMISSION,                                 :
                                            :
        Additional Defendants.             :

## <u>MEMORANDUM</u>

Before the court is a motion for summary judgment filed by Jeffrey and Arlene

Zappala (hereinafter "Defendants"). This action arises from a tragic motor vehicle accident

of May 12, 2002 that occurred in the northbound lanes of the Northeast Extension of the

Pennsylvania Turnpike (hereinafter "I-476") roughly two miles south of the Wilkes-Barre

Interchange (#36). William J. Yurecka (hereinafter "Decedent") was killed when a vehicle

operated by additional defendant Ronald M. Rockwell veered off of I-476 and struck

Decedent who was standing near his own vehicle on the eastern berm of the highway.

Prior to the fatal collision, Decedent, accompanied by his wife and children, stopped his vehicle on the berm in an effort to render aid to Defendants.  The latter had recently been involved in a one-car motor vehicle accident.  Plaintiffs' complaint asserts claims against Defendants based upon the "rescue doctrine," pursuant to which an individual who suffers harm while coming to the aid of another in peril has a cause of action in negligence against the party responsible for danger that precipitated the rescue.  The complaint includes claims for negligent infliction of emotional distress.  In their motion for summary judgment, Defendants contest the applicability of the rescue doctrine to the facts of the present case.  Specifically, Defendants contend that by the time Decedent was killed, he and his wife had determined that Defendants were not in peril and, therefore, the rescue doctrine does not apply to furnish Decedent with a direct cause of action or plaintiffs with the causal link necessary to support their claims for negligent infliction of emotional distress.  Plaintiffs' response suggests that the doctrine be read broadly to include actions taken to aid and monitor Defendants after Decedent and Marie Yurecka  determined that the former were no longer in imminent peril.[1]  For the reasons which follow, we grant Defendants' motion

---

[1]

Plaintiffs additionally note that Defendants failed to provide a statement of undisputed facts with their motion for summary judgment as mandated by Local Rule 56.1.  Plaintiffs ask that Defendants' motion be denied on this basis.  Defendants did, however, include a lengthy fact section in their motion and memorandum in support thereof.  Moreover, Defendants filed a response to plaintiffs' own statement of facts.  Violations of Local Rules are subject to a harmless error analysis.  See *Hill v. Williamsport Police Dept.*, 2003 WL 21466902 (3d Cir. 2003).  District courts are given, "broad discretion in interpreting, applying, and determining the requirements of their own local rules and general orders."  *U.S. v. Gray*, 876 F.2d 1411, 1414 (9th Cir. 1989) (internal citations omitted).  We determine that Defendants' failure to file a separate statement of undisputed facts as required by Local Rule 56.1 was harmless error and did not prejudice the plaintiffs.  Accordingly, we will review Defendants' motion despite the procedural lapse.

for summary judgment.

## I.    BACKGROUND

On May 12, 2002, Jeffrey Zappala was driving his wife, Arlene Zappala 's Toyota 4-Runner in the left lane of the two northbound lanes of I-476.  *See* Arlene Zappala's dep. at p. 20.  Arlene Zappala was a passenger in the 4-Runner.  It was raining heavily and the roadway was wet and spotted with puddles.  Shortly before 5:00 p.m., Mr. Zappala lost control of his vehicle, veered off of the right side of the highway, crossed a section of grass, struck a metal barricade, and flipped the SUV onto its roof.  *See* Arlene Zappala's undated recorded statement at p.2; *see* Police Accident Report No. P0340165 (first accident).  Mr. Zappala acknowledges that he was driving too fast for the conditions.  *See* Jeffrey Zappala's dep. at p. 47.

Decedent was operating his minivan northbound on I-476 prior to Mr. Zappala's accident.  Plaintiffs, Marie Yurecka, and her three children were passengers in the vehicle.  *See* Marie Yurecka's dep. at 10.  Mrs. Yurecka  witnessed Defendants' white Toyota 4-Runner pass the plaintiffs' minivan on I-476 and travel out of sight.  *Id.* at 16.  The next time Mrs. Yurecka noticed the Defendants' vehicle, it was turned over onto its roof and positioned off to the side of the road.  *Id.* at 17.  Upon seeing the Defendants' overturned vehicle, Decedent mentioned to his wife that they should practice first aid.  *Id.* at 18.  Both Decedent and Mrs. Yurecka were certified in first aid from the Red Cross.  *Id.* at 29.

One other vehicle was already stopped along the berm when Decedent pulled over for the purpose of rendering aid.  *Id.* at 22.  The operator or passenger of the first vehicle that stopped along the highway assisted Defendants in exiting their overturned SUV.  *See*

Arlene Zappala's dep. at p. 23.  Decedent went to a call box to contact the police before going to the Defendants' SUV.  *See* Mrs. Yurecka's dep. at 28.  The Zappalas were already out of their overturned vehicle when Decedent and Mrs. Yurecka walked down a grass decline toward the 4-Runner.  *Id.* at 24.  The Zappalas walked toward Decedent and Mrs. Yurecka as the latter couple approached the overturned SUV.  *Id.*

Mrs. Yurecka asked Defendants if they were all right.  *See* Marie Yurecka's dep. at 25.  Defendants responded that they were all right.  *Id.*  Defendants did not appear injured and were not bleeding.  *Id.* at 25-26.  Mrs. Yurecka did not believe that Defendants appeared to be in shock as a result of the first accident.  *Id.* at 31.  She did not believe that either of the Defendants was in imminent danger at any time prior to the fatal collision between Mr. Rockwell and Decedent.  *Id*. at 33.  Decedent and Mrs. Yurecka walked with Defendants to the rear of the Yurecka's minivan.  *Id.* at 28.  The Yurecka's opened the minivan's rear hatch to give the Defendants shelter from the torrential rain.  *Id.*  The Yureckas made room for the Defendants to sit and gave the Defendants blankets for warmth.  *Id.*

The Yurekas and Defendants were at the rear of the Yurecka's minivan waiting for the police when a vehicle driven by additional defendant, Ronald M. Rockwell, swerved in the northbound lanes of I-476 and hit the median separating the north and southbound lanes.  Mr. Rockwell then veered off the right, or eastern side, of the highway, colliding with the driver's side rear of the Yurecka's minivan and striking Decedent.  The three Yurecka children were sitting in the minivan.  Decedent had been standing closest to the roadway.  *See* Jeffrey Zappala's dep. at 38.  Decedent was thrown north and landed in the left lane

4

of northbound I-476.  He died as a result of the injuries sustained in the collision.

The only reference to the timing of the accidents in any of the exhibits to the motion for summary judgment, responses and reply brief, is found on the police reports of the two accidents.  The report relating to the first accident involving the Defendants' 4-Runner notes a dispatch time of 4:51 p.m. and an arrival time of 5:16 p.m.  *See* Police Accident Report No. P0340165 (first accident).  The report relating to the fatal collision records a dispatch time of 5:08 p.m. with an arrival time of 5:16 p.m.  *See* Police Accident Report No. P0340157 (second accident).  Neither police report contains witness statements identifying how much time elapsed between the two accidents.  Moreover, none of the depositions or witness statements provided with the motion and responses contribute information sufficient to delineate the amount of time that passed from the point that Decedent and his wife arrived on the scene of the first accident until Mr. Rockwell struck Decedent.  Neither Mr. Zappala, nor Mrs. Zappala is able to recall how much time elapsed between the first accident and the fatal collision.  *See* Jeffrey Zappala's dep. at p. 37; *see* Arlene Zappala's dep. at 27.  Mrs. Yurecka testified at her depositions that she does not know how much time elapsed between stopping to assist Defendants and the collision that killed her husband.  *See* Marie Yurecka's dep. at 30.

## II.   DISCUSSION

### A.   Summary Judgment Standard

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to a

judgment as a matter of law." FED. R. CIV. P. 56(c).  A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under applicable law.  *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).  "Facts that could alter the outcome are material facts." *Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 197 (3d Cir. 1994), *cert. denied*, 513 U.S. 1022 (1994).  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Initially, the moving party must show the absence of a genuine issue concerning any material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *See  Continental Ins. Co. v. Bodie*, 682 F.2d 436, 438 (3d Cir. 1982).  Once the moving party has satisfied its burden, the nonmoving party, "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257.  Mere conclusory allegations or denials taken from the pleadings are insufficient to withstand a motion for summary judgment once the moving party has presented evidentiary materials. *See Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990).  Rule 56 requires the entry of summary judgment if there was adequate time for discovery and a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### B.     Rescue Doctrine Analysis

Defendants note that they were not seriously injured in the motor vehicle accident that inspired Decedent's actions.  They assert that Decedent and his wife arrived at the accident scene after the accident happened and after they had been assisted from the overturned SUV by another individual.  Defendants contend that, as a result, Decedent was not involved in a rescue when he pulled to the side of I-476 and approached Defendants' SUV.  Defendants additionally argue that at the time of the second fatal accident, Decedent had determined that Defendants were not under the immediate threat of death or injury.  They conclude that the Pennsylvania rescue doctrine does not apply once Decedent knew Defendants to be out of immediate danger and where Decedent and his wife were merely offering shelter and comfort to the Defendants.  Defendants are correct.

### i.     Pennsylvania Case Law On The Rescue Doctrine

The rescue doctrine is seldom employed, but well-rooted in Pennsylvania law.  The seminal case applying the rescue doctrine in Pennsylvania is *Corbin v. Philadelphia*, 195 Pa. 461 (1900).  The *Corbin* plaintiff sued the City of Philadelphia after her son died descending into a trench dug by the City near a vacant lot where children regularly played ball.  *Id.* at 464.  The decedent's playmate had entered the trench to retrieve a ball and fell while trying to climb a makeshift ladder out of the ditch.  *Id.* at 465.   The plaintiff's decedent climbed down into the ditch in an attempt to help the playmate, but was overcome and killed by gas accumulated at base of the trench.  *Id.*  The City had abandoned work on the ditch a few days previous due to the presence of the deadly gas, but neglected to post warning signs of the danger presented.  *Id.* at 464-65.

The Pennsylvania Supreme Court reversed the directed verdict entered for the City on the basis of the nascent Pennsylvania rescue doctrine.  In explaining the doctrine, the court relied heavily upon New York case law including, *Eckert v. Long Island Railroad Co.*, 43 N.Y. 502 (1871).[2]  The Supreme Court reasoned as follows:

> A rescuer--one who, from the most unselfish motives, prompted by the noblest impulses that can impel man to deeds of heroism, faces deadly peril--ought not to hear from the law words of condemnation of his bravery, because he rushed into danger, to snatch from it the life of a fellow creature imperiled by the negligence of another; but he should rather listen to words of approval, unless regretfully withheld on account of the unmistakable evidence of his rashness and imprudence. This, conscience and reason approve, and the best judgment of thoughtful and intelligent judges has declared it to be the law of the land. Relying, as we safely can, upon the considerate judgment of other courts on this important question raised before them, we cannot better dispose of it than by calling attention to what they have said; adding in every case our approval of what was declared to be the reason of the law as announced.

*Corbin v. Philadelphia*, 195 Pa. at 468-69.

The Eastern District published an opinion in 1982 permitting a widow of a man killed in a hotel fire while attempting to rescue hotel guests to recover from the negligent hotel. *Altamuro v. Milner Hotel, Inc.*, 340 F.Supp. 870 (E.D.Pa. 1982).  In *Altamuro*, the decedent repeatedly entered a burning hotel and ascended an elevator to evacuate or aid guests in fleeing from the building.  *Id.* at 872-73.  The man died after he disregarded instructions from the police department and the hotel desk clerk to stay out of the building.  *Id.*  The

---

[2]

The *Corbin* opinion found on Westlaw cites to *Eckert v. Railroad Co.*, 43 N.Y. 530.  The opinion found on Lexis Nexis provides the cite as *Eckert v. Long Island R. Co.*, 43 N.Y. 503.  Neither cite is correct.

Eastern District relied upon the *Corbin* decision in entering an award for the plaintiff widow.

The court additionally cited then New York Court of Appeals Justice Cardozo's articulation

of the rescue doctrine:

> Danger invites rescue.  The cry of distress is the summons to
> relief.  The law does not ignore these reactions of the mind in
> tracing conduct to its consequences.  It recognizes them as
> normal.  It places their effects within the range of the natural
> and probable.  The wrong that imperils life is a wrong to the
> imperiled victim; it is a wrong also to his rescuer.  The state
> that leaves an opening in a bridge is liable to the child that falls
> into the stream, but liable also to the parent who plunges to its
> aid . . ..  The risk of rescue, if only it be not wanton, is born of
> the occasion.   The emergency begets the man.   The
> wrongdoer may not have foreseen the coming of the deliverer.
> He is accountable as if he had . . ..

*Id.* at 874 *(quoting Wagner v. International Railway Co.*, 232 N.Y. 176, 180, 133 N.E. 437,

438 (1921)).

In 1986, the Pennsylvania Superior Court modified the rescue doctrine by holding

that a rescuer's comparative negligence was to be weighed by the jury in apportioning

liability. *Pachesky v. Getz*, 510 A.2d 776 (Pa.Super. 1986).  The *Pachesky* rescuer/plaintiff

was injured while attempting to pull the defendant from a car that was stopped in the

middle of a roadway.  The rescuer believed that the defendant, subsequently determined

to have been intoxicated, may have been overcome by carbon monoxide. *Id.* at 777.  The

*Pachesky* plaintiff reached into the stopped vehicle and turned off the ignition, intending

to extricate the defendant from the car. *Id.*  The plaintiff did not look to see if the car was

in gear prior to turning it off.  The vehicle rolled backward and struck the plaintiff. *Id.*  The

judge instructed the jury on the rescue doctrine and comparative negligence. *Id.* The jury

returned a verdict for the defendant, having attributed 80% of the casual negligence to the

rescuer plaintiff.  *Id.*

In affirming the judgment, the Superior Court noted, "when a plaintiff acts unreasonably, that is, in a negligent fashion, in performing a rescue, the relative casual negligence of the parties should be apportioned in accordance with the provisions of [Pennsylvania's comparative negligence statute]."  *Pachesky*, 510 A.2d at 783.  While holding that comparative negligence principals applied to rescue doctrine cases, the *Pachesky* opinion reaffirmed the vitality of the latter doctrine in Pennsylvania law.  The court articulated the state of the doctrine as follows: "We hasten to add that the rescue doctrine is clearly not subsumed by our system of comparative negligence. Of the previously articulated dual purposes which the doctrine served, the doctrine continues to serve the vital, albeit singular, purpose of establishing a causal connection between a defendant's negligence and a plaintiff/rescuer's injury, which in turn leaves open the courthouse door."  *Id.*  The Pennsylvania Superior Court, like the Eastern District in *Altamuro*, quoted Justice Cardozo's opinion in *Wagner v. International R. Co.* as evidence of the doctrine's pedigree.  *Id.* at 781.

The most recent Pennsylvania appellate court opinion on the rescue doctrine is *Bell v. Irace*, 619 A.2d 365 (Pa.Super. 1993).  The *Bell* plaintiff was an EMT who responded to an accident involving a motor vehicle and a pedestrian.  *Id.* at 367.  The plaintiff was injured by the pedestrian while attending to the latter's  injuries.  The EMT subsequently sued both the driver of the motor vehicle and the pedestrian under an ordinary negligence theory and pursuant to the rescue doctrine, alleging that both pedestrian and driver were negligent in bringing about the accident.  *Id.* at 366-67.  The Superior Court affirmed the

trial court's order sustaining preliminary objections.   Specifically, the Superior Court determined that the rescue doctrine did not apply due to the fact that the plaintiff arrived at the scene after the accident happened and because she rendered assistance after the immediate peril had dissipated.  *Id.* at 370.   The *Bell* court defined the limits of the rescue doctrine as follows:

> In order to constitute a "rescue," a person must attempt to prevent another person from suffering serious injury or death. Id. at 517, 510 A.2d at 782 (quoting 57 Am.Jur.2d Negligence § 419 (1971)). In addition, the situation precipitating the "rescue" must warrant a reasonable belief that the peril facing the object of the rescue was urgent and imminent. "There can be no reasonable belief of continued peril if the rescuer has knowledge that the victim's condition is stable, requiring only medical attention...." 57A Am.Jur.2d, Negligence § 1087 (1989). These principles are clear from an examination of the facts in cases where the rescue doctrine was applied.

*Bell*, 619 A.2d at 369.[3]  The court held that the rescue doctrine, "does not apply where, as here, a plaintiff gave assistance after the imminent peril had ceased."  *Id.* at 370.

In the instant matter, it is evident from the facts that the rescue doctrine would apply if Decedent had been struck and killed as he approached the defendants' overturned car. Decedent and his wife had only recently witnessed the Zappalas' SUV pass them in the pouring rain on the northbound lanes of I-476.  They came upon the SUV overturned on the side of the highway.  Decedent commented to his wife that the couple should stop and attempt to assist the occupants of the SUV by practicing their first aid skills.  When the Yureckas parked their car along the berm and approached the Zappalas' 4-Runner, the

---

[3]

The *Bell* citations to American Jurisprudence 2d are not found in the current version of the encyclopedia.  The rescue doctrine is presently found at 57B Am. Jur. 2d Negligence §§ 926 et. seq. (2004).  § 934 concerns the specific issue of the rescuer's reasonable belief of continued peril.

situation precipitating the rescue warranted a reasonable belief that the peril facing the Zappalas was "urgent and imminent." *Bell*, 619 A.2d at 369.   Accordingly, the rescue doctrine does apply, at least initially, to the scenario presented in this litigation.   Having determined that the rescue doctrine applied to Decedent's initial attempts to render aid, we must determine whether the doctrine continues to provide a cause of action for injuries sustained sometime after the initial rescue efforts.

### ii.    The Extension Of The Rescue Doctrine To Assistance Rendered By Decedent After Threat Of Immediate Peril Ceased

While the *Bell* opinion bears some factual similarities with the present case, none of the cases discussed above concern a fact pattern quite like that presented by the instant action.  It is not entirely clear from the language of the Pennsylvania precedent alone how the Pennsylvania Supreme Court would rule on the issue presented: does the rescue doctrine continue to apply to actions taken by a rescuer in the furtherance of offering aid after the threat of imminent peril has ceased?  As noted above, Defendants assert that the rescue doctrine does not apply to the facts of the plaintiffs' claim.  They rely heavily upon the holding in *Bell* and its rule that the doctrine cannot apply where there is no reasonable belief of continued peril.   They posit that Pennsylvania precedent mandates a narrow application of the rescue doctrine.  Plaintiffs suggest that the Pennsylvania Supreme Court would treat the present matter differently.  Specifically, plaintiffs point to the New York case of *Villoch v. Lindgren*, 269 A.D.2d 271 (N.Y.App.Div. 2000), to support the contention that Decedent's rescue was still in progress at the time of the fatal second accident.  Plaintiffs opine that the Pennsylvania Supreme Court would adopt a similar broader application of the rescue doctrine, and permit plaintiffs to pursue an action against Defendants.

Our task as a Federal Court sitting in diversity is to determine how the Pennsylvania Supreme Court would resolve the issue if called upon to do so.  *See Prudential Prop. & Cas. Ins. Co. v. Pendleton*, 858 F.2d 930, 934 (3d Cir.1988).  When a court faces issues of state law that have not been directly addressed by the state's highest court, the court must predict how the state's highest court "would resolve these issues should it be called upon to do so."  *Wiley v. State Farm Fire & Cas. Co.*, 995 F.2d 457, 459 (3d Cir.1993).  In attempting to forecast state law, a court must "consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand."  *McKenna v. Ortho Pharm. Corp.*, 622 F.2d 657, 663 (3d Cir.1980).  "Absent some reason to believe that the supreme court would reach a different result, the superior court's holding is entitled to great deference in our endeavor to predict state law."  *Koppers Co., Inc. v. Aetna Cas. and Sur. Co.*, 98 F.3d 1440, 53 (3d Cir.1996); *citing Rolick v. Collins Pine Co.*, 925 F.2d 661, 664 (3d Cir.1991) (predicting Pennsylvania law, and stating that federal court is not to disregard decision of intermediate appellate court unless convinced that state's highest court would establish different rule).  With the above standard in mind, and examining the record in the light most favorable to the plaintiffs, we review all relevant sources to determine whether the Pennsylvania Supreme Court would permit the application of the rescue doctrine in this case.

### a. Broad Application Of Rescue Doctrine - The Unbroken Continuity Approach

The *Villoch* opinion cited by plaintiffs had a factual scenario not unlike the present case.  The *Villoch* plaintiff came upon the defendant's vehicle stopped in the roadway,

smoking, and with damage to the front end. *Villoch*, 269 A.D.2d at 272. Plaintiff pulled his car over, approached the defendant's vehicle, and noticed that the defendant was pale, his eyes were closed, and his head tilted back. *Id.* The defendant mumbled that he was alright. *Id.* A police officer arrived at the scene and waived the plaintiff and another rescuer over to the police car. *Id.* The defendant came to, exited his car, and followed the plaintiff over to the police officer. *Id.* The plaintiff was standing in the roadway speaking with the police officer when another vehicle collided with the police car and struck the plaintiff. *Id.* Among other defendants, the plaintiff sued the driver of the vehicle he initially stopped to help pursuant to the rescue doctrine and based upon evidence that the defendant had been operating his vehicle while legally drunk. *Id.* The trial court dismissed the *Villoch* plaintiff's case, ruling that the rescue doctrine was inapplicable. The appellate court reversed, holding that the plaintiff, "was in an emergency situation and that there was an 'unbroken continuity' between his discovery of the disabled automobile and . . . the ultimate consequences to plaintiff." *Villoch*, 269 A.D.2d at 273 (citing Justice Cardozo's opinion in *Wagner*, 232 N.Y. at 181).

The *Wagner* opinion itself is not factually similar to the present case. Nonetheless, the holding in *Wagner* supports a broader application of the rescue doctrine. The *Wagner* plaintiff and his cousin boarded the defendant's train at the base of a long trestle. *Wagner*, 232 N.Y. at 179. The car was crowded, forcing the plaintiff and his cousin to stand on the rear platform. *Id.* The conductor neglected to close the platform's doors. *Id.* Plaintiff's cousin fell from the car as the train turned a curve at a point where the trestle changed to a bridge. *Id.* The train stopped after it had crossed the bridge. *Id.* The plaintiff walked

14

back along the trestle in the dark until he arrived at the point on the bridge where he thought he might find his cousin's body. *Id.* When plaintiff reached the bridge he found his cousin's hat but nothing else. *Id.* The plaintiff had walked 445 feet from the stopped train. *Id.* In searching for his cousin, the plaintiff missed his footing and fell to the ground, receiving the injuries for which he sued the railroad company. *Id.* In reversing the appellate court's ruling upholding the trial court's decision not to instruct the jury on the rescue doctrine, Justice Cardozo rejected the railroad company's assertion that the rescue doctrine only applies in cases where a plaintiff's actions were spontaneous or immediate. *Id.* at 180. Justice Cardozo held that the rescue doctrine should not be so limited and determined that there only need to be an "unbroken continuity between the commission of the wrong and the effort to avert its consequences." *Id.* at 181. *Wagner* permits a rescue doctrine plaintiff to recover despite the fact that he had time to deliberate and instances where, "impulse has given way to judgment." *Id.* at 180.[4]

### b.   Narrow Application Of Rescue Doctrine - The Continued Peril Approach

As noted above, the Superior Court cited to American Jurisprudence 2d for the

---

[4]

There is at least one recent opinion from a court outside of New York applying the rescue doctrine liberally. In *Wharf v. Burlington Northern Railroad Co.*, 60 F.3d 631 (9th Cir. 1995), the Ninth Circuit held that the rescue doctrine applied in an injured worker's Federal Employers' Liability Act (FELA) suit against his employer. Prior to suffering injury, the *Wharf* plaintiff had worked for twenty to twenty-five minutes removing ballast from underneath a railroad car in order to free a coworker who had become trapped in frozen ballast in the car. *Id.* at 634. The plaintiff was taking a break from the work when he heard someone yelling above him. *Id.* The plaintiff stepped back and tripped over a sledgehammer, sustaining injuries. *Id.* The 9th Circuit determined that the rescue doctrine applied, but made no indication in the opinion that the coworker stuck in the ballast faced the threat of immediate injury or death and did not include immediate peril among the requisite elements of its rescue doctrine analysis.

proposition the rescue doctrine cannot apply where the plaintiff has knowledge that the victim's condition is stable.  *Bell*, 619 A.2d at 369 (citing 57A Am.Jur.2d, Negligence § 1087).  While the current edition of the legal encyclopedia does not contain the exact language cited by the Superior Court, it does propose the narrow application of the rescue doctrine.  Section 934 states, in pertinent part:

> A plaintiff remains in the course of a rescue attempt where the plaintiff acts under a reasonable belief that the endangered party's peril continues.  However, a reasonable belief of continued peril cannot exist in a case where the negligent act causing the victim's injuries has run its course and the victim's life is no longer in peril, unless the knowledge of the rescuer gives him or her reason to believe that the peril to the victim's life is continuing.

57B Am.Jur.2d, Negligence § 934.

The above section of American Jurisprudence 2d cites to an Ohio case, *Estate of Minser v. Poinsatte*, 717 N.E.2d 1145 (Ohio App. 1998), and a Washington opinion, *Estate of Keck v. Blair*, 856 P.2d 740 (Wash. App. 1993), to support the continuing peril requirement.  In *Minser*, the Court of Appeals of Ohio held that the rescue doctrine did not apply to a motorist who was electrocuted after stopping to assist the victims of a motor vehicle accident.  *Id.* at 1148-49.  Testimony established that the accident victims were out of their vehicles and were under the care of a nurse at the time that the plaintiff came into contact with the downed power line.  *Id.*  The court concluded that the defendant's negligent act, "that caused injuries to the van passengers had run its course and no immediate peril existed for either victim" at the point that plaintiff suffered the fatal shock. *Id.*  Similarly, the Court of Appeals of Washington held that the rescue doctrine will only apply where the peril to the life or limb of another is imminent.  *Estate of Keck*, 856 P.2d

at 743.

### c.      Pennsylvania Employs Narrow Application Of Rescue Doctrine - The Continued Peril Approach

Plaintiffs present a persuasive argument for the broad application of the rescue doctrine.  The *Villoch* opinion includes a scenario similar to the string of events that led to the tragic death of Mr. Yurecka.  Moreover, the adoption of New York's unbroken continuity approach is attractive given the preeminence of Justice Cardozo's *Wagner* opinion and the fact that Pennsylvania's seminal case on the doctrine, *Corbin v. Philadelphia*, relied heavily on New York law, specifically endorsing the doctrine as defined in an earlier New York case.  *Corbin*, 195 Pa. at 469.  Additionally, the broad application of the doctrine would further promote the policy considerations espoused by Justice Cardozo in *Wagner* and noted by the Pennsylvania Supreme Court in *Corbin*, that a plaintiff prompted by noble impulses, "ought not to hear from the law words of condemnation of his bravery . . .." *Corbin*, 195 Pa. at 468.  Finally, the unbroken continuity approach appeals to logic  in this matter.  The unbroken continuity approach would acknowledge that Decedent's rescue included summoning the police, shepherding the Defendants out of a torrential downpour, and providing same with blankets and a dry, safe shelter out of traffic, with the intention of waiting a few short moments until the arrival of police or EMS.  These propositions however, are insufficient in light of the Superior Court's language in *Bell* and our determination that the Pennsylvania Supreme Court would apply the narrower approach to the rescue doctrine.

In *Bell v. Irace*, the Superior Court held that in order to constitute a "rescue" for the purposes of the rescue doctrine, the plaintiff must attempt to prevent another person from

suffering serious injury or death.  *Bell*, 619 A.2d at 369.  Additionally, the opinion clearly states that the situation precipitating the rescue must warrant a reasonable belief that the peril facing the object of the rescue is urgent and imminent, and that the doctrine will not apply if the plaintiff knows that the victim's condition is stable, requiring only medical attention.  *Id.  Bell's* language reflects the rules of law found in other state's cases that implement the narrower version of the rescue doctrine, or the imminent peril approach.  *See*, *Estate of Minser v. Poinsatte*, 717 N.E.2d 1145; *see also Estate of Keck v. Blair*, 856 P.2d 740 (holding rescue doctrine only applies where peril to life or limb is imminent).  Additionally, *Bell's* reliance upon American Jurisprudence 2d's recitation of the doctrine as requiring imminent peril supports the conclusion that the Superior Court adopted the narrow approach to the rescue doctrine in the *Bell* opinion.  While there exists precedential and logical support for the application of the rescue doctrine as proposed by the plaintiffs, we see no reason to believe that the Supreme Court would reach a conclusion different from the Superior Court's holding in *Bell.*  In light of the language used in *Bell*, a review of cases from other jurisdictions and of secondary sources does not persuade us of Pennsylvania's adherence to a liberal application of the rescue doctrine.  *See Koppers Co., Inc. v. Aetna Cas. and Sur. Co.*, 98 F.3d 1440 (holding "[a]bsent some reason to believe that the supreme court would reach a different result, the superior court's holding is entitled to great deference in our endeavor to predict state law.")

### d.     The Rescue Doctrine Does Not Apply

Reviewing the facts in the light most favorable to the plaintiffs, Pennsylvania's rescue doctrine does not apply in this instance to provide plaintiffs with a cause of action against Defendants.  Applying the immediate peril approach to the instant facts, plaintiffs

cannot show that the Decedent was attempting to prevent Defendants from suffering serious injury or death at the time of the tragic collision that took his life.  Rather, upon first speaking with Defendants, it was apparent that Defendants were not injured.  *See* Marie Yurecka's dep. at 31.  Marie Yurecka testified that she did not believe that either of the Defendants was in imminent danger at any time prior to the fatal collision involving Mr. Rockwell's vehicle.  *Id.* at 33.  Accordingly, the rescue doctrine does not apply in this instance.  *See Bell*, 619 A.2d at 369 (holding rescue doctrine only applies where reasonable belief that another faces urgent and imminent peril and does not apply where victim's condition is stable).  Absent the rescue doctrine, plaintiffs cannot prove the element of causation in their negligence action against Defendants.  *See Pachesky*, 510 A.2d at 783 (holding rescue doctrine serves singular "purpose of establishing a causal connection between a defendant's negligence and a plaintiff/rescuer's injury, which in turn leaves open the courthouse door").  Accordingly, summary judgment will be entered in favor of Defendants.[5]

## III.   CONCLUSION

Summary judgment in favor of the Defendants is appropriate in this instance as plaintiffs have failed to make a showing sufficient to establish the existence of an element, causation, essential to their case against Defendants.  *See Celotex*, 477 U.S. at 322; *see also* FED. R. CIV. P. 56.  Having determined, as a matter of law, that the rescue doctrine is inapplicable to the facts presented in this lawsuit, we find that the plaintiffs are left

---

[5] Because we determine that Defendants' motion should be granted on the basis of the rescue doctrine, we will not address defendant, Arlene Piccioni-Zappala's separate argument for summary judgment based upon lack of liability.

without a cause of action against Jeffrey Zappala and Arlene Piccioni-Zappala.
Accordingly, we will grant Defendants' motion.


                                                                           s/Edwin M. Kosik
                                                                  United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARIE M. YURECKA, individually and          :
as Administratrix of the ESTATE OF          :
WILLIAM J. YURECKA, Deceased,               :
and as Natural Guardian of MICHELLE         :
M. YURECKA, and KEVIN W.                    :
YURECKA, Minors, and BRYAN R.               :
YURECKA, Individually                       :
                                            :
          Plaintiffs,                       :
                                            :
     vs.                                    :    CIVIL ACTION NO. 3:04-CV-1352
                                            :    (JUDGE KOSIK)
JEFFREY ZAPPALA and ARLENE                  :
ZAPPALA                                     :
                                            :
          Defendants and Third              :
          Party Plaintiffs,                 :
                                            :
     vs.                                    :
                                            :
RONALD C. ROCKWELL,                         :
RONALD M. ROCKWELL, and                     :
THE PENNSYLVANIA TURNPIKE                   :
COMMISSION,                                 :
                                            :
          Additional Defendants.            :

## ORDER

AND NOW, this 20th day of April, 2005, IT IS HEREBY ORDERED THAT:

[1] the defendants' motion for summary judgment (Doc. 25) on all counts of plaintiffs' complaint is granted;

[2] judgment is hereby entered in favor of the defendants and against plaintiffs;

[3] the Clerk of Court is directed to close this case.

_____
                                            s/Edwin M. Kosik
                                            United States District Judge